**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | :     Civil Action No. 07-6123 (SDW) |
| v. | :     **OPINION** |
| JOSEPH L. GRELLO, DARLENE GRELLO, et al., | :     October 19, 2010 |
| Defendants. | : |

**WIGENTON**, District Judge.

Before the Court are two Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c) by the United States of America ("Plaintiff") and Joseph Grello and Darlene Grello[1] ("Defendants"). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1340 and 1345 and pursuant to 26 U.S.C. § 7402. Venue is proper pursuant to 28 U.S.C. § 1396. The Motions are decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, Plaintiff's Motion for Summary Judgment is granted and Defendants' Motion for Summary Judgment is denied.

## FACTUAL AND PROCEDURAL HISTORY

Defendant Joseph was the owner, president and sole officer of Icon Mechanical Inc. ("Icon"). (Ex. 504, J. Grello Dep., 10:15-24; 11:10-12:6.) As the sole corporate officer, Joseph testified that he was the only person who had the authority to write checks, pay the bills, pay taxes and pay creditors. (Id. at 21:22-25.) Pursuant to 26 U.S.C. §§ 3102 and 3401, Icon had an

---

[1] Individual references to the Defendants will be done using their first names since they have the same last name.

obligation to withhold income and social security taxes from its employees' wages ("trust fund taxes") and remit the withheld taxes to the United States Treasury.  However, Plaintiff alleges that Joseph failed to remit the trust fund taxes for certain quarters.  (Compl. ¶ 15.)  During the relevant quarters at issue, Icon filed tax returns using Form 941 which indicated the amount Icon owed in taxes.  (Exs. 201, 201(a).)  As a result, Plaintiff assessed tax liabilities against Joseph pursuant to 26 U.S.C. § 6672.  The quarters in question and the amounts assessed are:

| Period Ending | Assessment Date | Assessment |
|---|---|---|
| September 30, 2002 | October 4, 2004 | $6,521.55 |
| September 30, 2002 | April 14, 2005 | $3,569.94 |
| December 31, 2002[2] | April 14, 2005 | $2,977.84 |
| June 30, 2003 | April 14, 2005 | $2,745.49 |
| September 30, 2003 | October 4, 2004 | $10,120.10 |
| September 30, 2003 | April 14, 2005 | $2,659.41 |
| December 31, 2003 | October 4, 2004 | $250.35 |
| March 31, 2004 | October 4, 2004 | $10,314.22 |
| March 31, 2004 | April 14, 2005 | $2,696.03 |
| June 30, 2004 | April 14, 2005 | $180.22 |
| September 30, 2004 | April 14, 2005 | $1,474.99 |

(Compl. ¶ 11.)  On July 6, 2004, Plaintiff sent a letter to Joseph notifying him of Icon's failure to pay the trust fund taxes.  (Ex. 240.)[3]  Joseph asserts that after he received the notice, he and his accountant met with two IRS agents and paid the taxes at issue.  (Defs.' Statement of Facts ¶ 10.)  However, other than this bare assertion, Defendants do not provide any evidence to support their assertion.

Subsequently, on January 28, 2005, Icon filed for bankruptcy.  (Id. at ¶ 2.)  At this time, Joseph's main asset was a house he co-owned with his wife, Darlene, valued at $700,000.  (Ex.

---

[2] Although the complaint asserts Plaintiff is seeking a judgment for the assessment for this quarter and the next quarter (June 30, 2003), it later concedes that it is not "seek[ing] judgment of th[ose] amounts for th[ose] quarter[s]."  (Pl.'s Opp. Br. 8-9.)

[3] Defendant alleges that he did not receive notice of his tax liabilities until liens were filed against his property on August 4, 2005.  (Def.'s Statement of Facts ¶ 21.)  However, this assertion is inaccurate as Defendant states in his deposition that he was "not saying [he] didn't receive" the notice.  (Ex. 504, J. Grello Dep., 120:20-21.)  Additionally, Defendants included the July 6, 2004, notice in their moving papers for summary judgment to explain why Joseph met with some Internal Revenue Service ("IRS") agents.  (Ex.B.)

504, J. Grello Dep., 106:14-107-1; Ex. 503, D. Grello Dep., 17:7-11.)  Joseph admits that after Icon filed for bankruptcy, he made payments to some of Icon's creditors.  The payments he made included: about $6,000 or $7,000 to suppliers, (Ex. 504, J. Grello Dep., 111:10-25); $1,200 to Johnstone Supply, (Id. at 114:4-14); and about $800 to Caldwell Plumbing. (Id. at 115:5-10.)  Furthermore, he paid the balance of Icon's New Jersey payroll taxes.  (Id. at 123:8-20.)  As a result of Joseph's failure to pay the overdue trust fund taxes the IRS filed a Notice of Federal Tax Lien against Defendants' house on August 9, 2005, in the amount of $50,228.03.[4]  (Ex. 500.)

**The Sale of Joseph's Interest in the House**

On April 6, 2005, Defendants refinanced their house and Joseph sold his interest in the house to Darlene for $1.00.  (Ex. 226.)  Darlene testified that other than the $1.00 no other consideration was given for the transfer.  (Ex. 503, D. Grello, 22:19-22.)  Joseph testified that he sold his interest in the house to his wife for estate planning purposes under the advice of his attorney even though he and his wife owned the house as tenants by the entirety under N.J. Stat. Ann. § 46:3-17.2 (West 2010).  (Ex. 504, J. Grello Dep., 93:16-20; 94:21.)  At the time of the sale, Joseph testified that Darlene, who is a nurse working on a per diem basis, was not working. (Id. at 20:17-23; Ex. 503, D. Grello Dep., 10:18-20.)  Consequently, although Darlene is listed as the borrower on the mortgage, (Ex. 225), a document produced by the mortgagee, First Franklin, in relation to this case notes that her current earnings were not used to secure the mortgage.  (Ex. 503, D. Grello Dep., 15:1-9.)  Additionally, Joseph signed the note and the accompanying Rider as a borrower, (Ex. 224; Ex. 225) and Darlene testified that after the sale, Joseph's income paid the mortgage and that "he [Joseph] was still on the mortgage."  (Ex. 503, D. Grello Dep., 13:16-

---

[4] Because this amount includes taxes due for the quarters ending in December 31, 2002, and June 30, 2003, it has to be reduced by those amounts to reflect Plaintiff's contention that it is not seeking judgment on those taxes. Therefore, the lien against the house should be $44,504.70.

20; 15:18-19; 21:13-19.)  Joseph also admitted that even though he had transferred the house to

his wife, he was still responsible for the current mortgage.  (Ex. 504, J. Grello Dep., 96:6-97-4;

99:8-10.)  Moreover, Joseph testified that other than the change in title, nothing had changed,

and he continued to reside at the house.  (Id. at 110:2-6.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue of material fact and that

the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The "mere

existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no *genuine*

issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  A fact is

only "material" for purposes of a summary judgment motion if a dispute over that fact "might

affect the outcome of the suit under the governing law . . . ."  Id. at 248.  A dispute about a

material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party."  Id.  The dispute is not genuine if it merely involves "some metaphysical

doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

586 (1986).  The moving party must show that if the evidentiary material of record were reduced

to admissible evidence in court, it would be insufficient to permit the non-moving party to carry

its burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the moving party meets its initial burden, the burden then shifts to the non-movant

who must set forth specific facts showing a genuine issue for trial and may not rest upon the

mere allegations or denials of its pleadings.  Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir.

2001).  "In considering a motion for summary judgment, a district court may not make

4

credibility determinations or engage in any weighing of the evidence; instead, the non-moving

party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"

Marino v. Indus. Crafting Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at

255).

## **DISCUSSION**

### A.  Liability Under 26 U.S.C. § 6672

Employers are required to withhold federal social security and income taxes from their

employees.  26 U.S.C. §§ 3101 and 3401.  The employer holds the withheld funds in trust for the

government and is required to turn over those funds to the IRS.  26 U.S.C. § 7501.  Failure to

remit the withheld funds to the IRS may result in the imposition of a penalty.  26 U.S.C. §

6672(a) provides in relevant part:

> Any person required to collect, truthfully account for, and pay over
> any tax imposed by this title who willfully fails to collect such tax,
> or truthfully account for and pay over such tax, or willfully
> attempts in any manner to evade any such tax or the payment
> thereof, shall, in addition to the penalties provided by law, be liable
> to a penalty equal to the total amount of the tax evaded, or not
> collected, or not accounted for and paid over.

To be personally liable under the statute, an individual has to qualify as a "responsible person,"

United States v. Vespe, 868 F.2d 1328, 1332 (3d Cir. 1989), and  "his or her failure to pay the

tax must be 'willful.'"  Greenberg v. United States, 46 F.3d 239, 242 (3d Cir. 1994).  If both of

these criteria are met, the IRS may assess personal liability on the individual under § 6672.  Id. at

242; see also Slodov v. United States, 436 U.S. 238, 244 (1978).  "An assessment by the

government is presumptively correct and . . . , the burden shifts to the defendant to show that he

was either not a responsible person or did not act willfully."  Vespe, 868 F.2d at 1331 (citing

Psaty v. United States, 442 F.2d 1154, 1160 (3d Cir. 1971)).

### i.  "Responsible Person"

A "responsible person" is "an officer or employee of a corporation," 26 U.S.C. § 6671, who has "significant, though not necessarily exclusive, control over the employer's finances." Vespe, 868 F.2d at 1332 (citing Purdy Co. of Illinois v. United States, 814 F.2d 1183, 1188 (7th Cir. 1987)); see also Brounstein v. United States, 979 F.2d 952, 954 (3d Cir. 1992) (internal quotation and citations omitted) (stating that "[r]esponsibility is a matter of status, duty, or authority, not knowledge. While a responsible person must have significant control over the corporation's finances, exclusive control is not necessary.").

Some of the factors courts may take into consideration in deciding whether a person is a "responsible person" under § 6672 include:

> (1) contents of the corporate bylaws, (2) ability to sign checks on the company's bank account, (3) signature on the employer's federal quarterly and other tax returns, (4) payment of other creditors in lieu of the United States, (5) identity of officers, directors, and principal stockholders in the firm, (6) identity of individuals in charge of hiring and discharging employees, and (7) identity of individuals in charge of the firm's financial affairs.

Brounstein, 979 F.2d at 954-55 (citing Datlof v. United States, 252 F. Supp. 11, 32-33 (E.D. Pa 1966), aff'd, 370 F.2d 655 (3d Cir. 1966), cert. denied, 387 U.S. 906 (1967)).

Although Defendants repeatedly assert that Joseph is not a "responsible person" within the meaning of § 6672, (Defs.' Opp. Br. 8, 16; Defs.' Br. 6), they do not produce any evidence to support that assertion. On the other hand, Plaintiff has provided evidence, through Joseph's deposition and various documentary evidence, that Joseph was indeed a "responsible person." The evidence provided indicates that throughout Icon's existence, Joseph was the sole corporate officer.  (Ex. 504, J. Grello Dep., 10:15-24; 11:10-12:1.)  Additionally, Joseph admitted that he

was the only person who had the authority to write checks, pay the bills, pay taxes and pay creditors and that he paid other creditors after Icon filed for bankruptcy.   (<u>Id.</u> at 21:22-25, 111:10-25.)   Both parties agree that there is no genuine issue of material fact. (Defs.' Br. 6.) Here, this Court finds that Joseph has not met his burden of proof as he has failed to come forth with any evidence that would show that he was not a "responsible person."   <u>See</u> <u>Bonnabel v. United States</u>, 744 F. Supp. 85, 88-90 (D.N.J. 1990) (finding person who was president and sole shareholder of company and had authority to sign company's checks and tax returns a "responsible person").

### ii.    "Willfulness"

Willfulness under the statute is "a voluntary, conscious and intentional decision to prefer other creditors over the Government."   <u>Quattrone Accountants, Inc. v. I.R.S.</u>, 895 F.2d 921, 928 (3d Cir. 1990).   "A responsible person acts willfully when he pays other creditors in preference to the IRS knowing that taxes are due, or with reckless disregard for whether taxes have been paid."   <u>Brounstein</u>, 979 F.2d at 956; <u>see also</u> <u>Greenberg</u>, 46 F.3d at 244 ("Any payment to other creditors, including the payment of net wages to the corporation's employees, with knowledge that the employment taxes are due and owing to the Government, constitutes a willful failure to pay taxes.").   "Reckless disregard includes failure to investigate or correct mismanagement after being notified that withholding taxes have not been paid."   <u>Greenberg</u>, 46 F.3d at 244 (quoting <u>Morgan v. United States</u>, 937 F.2d 281, 286 (5th Cir. 1991)).   Furthermore, a taxpayer recklessly disregards if he/she "(1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily."   <u>United States v. Carrigan</u>, 31 F.3d 130, 134 (3d Cir. 1994) (internal quotations omitted).

"Willfulness," under this statute does not require that the person "act with an evil motive or bad purpose." Greenberg, 46 F.3d at 244.

Although Joseph admits that he made payments to other creditors after Icon filed for bankruptcy on January 28, 2005, (Ex. 504, J. Grello Dep., 111:10-25; 114:4-14; 115:5-10; 123:8-20), he contends his actions were not "willful" because he had no reason to believe Icon owed any taxes when he made those payments to the other creditors.   (Defs.' Opp. Br. 8-9.) Defendants' argument lacks merit.  The IRS sent a letter to Joseph on July 6, 2004, (Ex. 240) notifying him that Icon had not paid its employment taxes.  During his deposition, Joseph stated that there is no reason he would not have received that notice or any other notice sent to his house.  (Ex. 504, J. Grello Dep., 120:20-21.)  Furthermore, Defendants produced the July 6, 2004, letter in their moving papers for summary judgment (Ex. B), and Joseph asserts that he met with some IRS agents after receiving that letter.   (Ex. 504, J. Grello Dep., 120:10-121:1-6.) Additionally, Joseph filed tax returns for Icon (Id. at 21:5), and those returns showed Icon's tax liability at the end of every quarter.  (Ex. 201, 201(a).)  Therefore, Defendants cannot now argue that Joseph did not receive notice of Icon's unpaid taxes prior to the filing of the lien against Defendants' home.  Defendants also maintain that to the extent Joseph paid other creditors, he only did so to avoid litigation.  (Defs.' Br. 8.)  Joseph's reason for paying other creditors is irrelevant to the "willfulness" analysis because "an evil motive or bad purpose" is not a requisite for finding "willfulness." Greenberg, 46 F.3d at 244.

Additionally, Defendants argue Joseph did not act willfully because two IRS agents assured him that all of Icon's tax liability had been paid as a result of some credits that were due to Icon and some payments he made to the IRS.  (Defs.' Opp. Br. 21-22.)  Defendants make these assertions without providing any evidence to support them.  There are no depositions,

certifications or affidavits from the IRS agents who allegedly assured Joseph that the credits would satisfy Icon's tax liability or copies of the checks he submitted to the IRS. Defendants cannot meet their burden based on bare assertions. See Vespe, 868 F.2d at 1331. But see Bonnabel, 744 F. Supp. at 91 (where the Court found a genuine issue of fact as to willfulness because the IRS conceded that taxpayer made payments and "attempted to pay his taxes in a timely fashion."). The record here shows that Joseph was aware of Icon's outstanding tax liability. The record also shows that Joseph made payments to other creditors notwithstanding his knowledge that Icon had not fully satisfied its tax liabilities. Consequently, Joseph, who is a "responsible person," acted willfully. As a result this Court finds that he exposed himself to personal liability under § 6672.

### iii.   Attachment of § 6672 Lien Against Defendants' Home

Defendants argue that Plaintiff cannot attach a § 6672 penalty as a lien because 26 U.S.C. § 6321 disallows such an attachment. (Defs.' Opp. Br. 10.) According to Defendants, § 6321 only allows an attachment of a lien resulting from the failure to pay taxes, not a penalty. (Id. at 10-11.) However, Defendants' argument is without merit as the plain language of § 6321 specifically states that unpaid taxes include penalties. Section 6321 (emphasis added) states:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or <u>assessable penalty</u>, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

Thus, the statute clearly applies to penalties assessed due to taxes owed and, Plaintiff can attach Joseph's tax liability as a lien on the house.

9

**B.  Liability under 26 U.S.C. § 6862**

Defendants contend Plaintiff wrongfully assessed a penalty against Joseph under § 6862 because "Plaintiff cannot assess a jeopardy assessment penalty on another penalty as a matter of law." (Defs.' Br. 9.)  Defendants' argument lacks merit for two reasons.  First, an assessment under § 6862 is not a penalty.  The relevant portion of § 6862(a) (emphasis added) provides:

> If the Secretary believes that the collection of any tax . . . under any provision of the internal revenue laws will be jeopardized by delay, he shall, whether or not the time otherwise prescribed by law for making return and paying such tax has expired, <u>immediately assess such tax</u> (together with all interest, additional amounts, and additions to the tax provided for by law).  <u>Such tax, additions to the tax, and interest shall thereupon become immediately due and payable</u>, and immediate notice and demand shall be made by the Secretary for the payment thereof.

This statute merely allows the IRS to expedite an assessment.  Therefore, the statute does not impose a penalty; it only pertains to the timing of the assessment.

Second, Defendants' argument that the jeopardy assessment was in error because there was no corresponding tax liability fails because as stated above, Joseph is personally liable for Icon's unpaid taxes from the quarters in question, with the exception of the December 31, 2002, and the June 30, 2003 quarters.  Defendants have not provided any evidence to rebut the presumption created by Plaintiff's assessment.  <u>Vespe</u>, 868 F.2d at 1331; <u>see also</u> <u>Freck v. Internal Revenue Service</u>, 37 F.3d 986, 992 n. 8 (3d Cir. 1994).  Additionally, for summary judgment purposes, a Certificate of Assessments and Payments "is sufficient evidence that an assessment was made," <u>United States v. Jones</u>, 877 F. Supp. 907, 913 (D.N.J. 1995) (quoting <u>Long v. United States</u>, 972 F.2d 1174, 1181 (10th Cir. 1992)), and is "presumptive proof of a valid assessment." <u>Jones</u>, 877 F. Supp. at 913 (citing <u>Geiselman v. United States</u>, 961 F.2d 1, 6 (1st Cir. 1992)).  Here, contrary to Defendants' position (Defs.' Br. 10), Plaintiff provided

Joseph with Certificates of Assessments and Payments for the tax periods ending in June 2003 (Ex. 302), June 2004 (Ex. 306), and September 2004 (Ex. 307) showing outstanding taxes of $2,756.80, $180.96, and $1,481.06 respectively.  To the extent that there is no Certificate of Assessment for the December 2002 quarter, the analysis does not change as Plaintiff has conceded that it is not seeking judgment for that quarter.  (Pl.'s Opp. Br. 8-9.)  Therefore, the jeopardy assessment was not in error as there were corresponding tax liabilities for the quarters in question.  Consequently, Defendants' argument that Joseph's liability should be reduced by $8,925.38 (Defs.' Opp. Br. 17) and $7,378.54 (Id. at 18) is unspportable.

### i.     Reasonableness of Jeopardy Assessment

Defendants next argue that Plaintiff has not established that its jeopardy assessment was reasonable.  26 U.S.C. § 7429(b) permits a taxpayer to seek judicial review of the IRS's assessment after he/she has exhausted internal procedures at the IRS.  Joseph has not sought administrative review of the jeopardy assessments.  (Basden Decl. ¶ 2.)  Therefore, Defendants are barred from seeking review of the assessment with this Court.  In any event, the Court will address Defendants' arguments.

In an action to review the reasonableness of a jeopardy assessment, the district court makes a de novo review of the assessment to determine whether it "was reasonable under the circumstances, and whether the amount assessed is appropriate under the circumstances."  Burd v. United States, 774 F. Supp. 903, 905 (D.N.J. 1991).  The government bears the burden of proving that the assessment was reasonable; however, the burden of proof as to the amount is on the taxpayer.  26 U.S.C. § 7429 (g)(1) and (2).

"In assessing the reasonableness of the IRS's actions, the Court is not limited to consideration of the information available to the IRS at the time of the assessment but must also

consider any subsequently available information that might impact on the reasonableness of the determinations. '[Any] relevant information should be considered.'" <u>Burd</u>, 774 F. Supp. at 906 (quoting <u>Loretto v. United States</u>, 440 F. Supp. 1168, 1172 (E.D. Pa. 1977)). "[R]easonable under the circumstances means something more than not arbitrary or capricious, and something less than supported by substantial evidence." <u>Loretto</u>, 440 F. Supp. at 1172 (internal quotations omitted).[5] Here, Plaintiff has met its burden as the record shows that Icon filed for bankruptcy in 2005. Additionally, the circumstances surrounding Joseph's conveyance of his main asset to his wife raises some concerns as Joseph fails to provide any valid legal reason for the sale.[6] Although there are some instances where the Court has found an assessment unreasonable because the taxpayer had provided "a rational justification for her conveyance" and did not the transfer property to place it beyond the government's reach, <u>see</u> <u>Burd</u>, 774 F. Supp. at 908, Defendants conduct is more akin to the circumstances in <u>Wolckenhauer v. United States</u>, 1996 U.S. Dist. LEXIS 5442, at *12-13 (D.N.J. Mar. 26, 1996) where the Court concluded that the evidence pointing to the taxpayer's conduct appearing to place property beyond government's reach sufficient to support the jeopardy assessment.

### ii.    Notice

Defendants assert that the jeopardy assessment was improper because Plaintiff did not provide notice of the assessments to Joseph. (Defs.' Br. 11-12.) This argument is without merit as the Certificates of Assessments and Payments, (<u>See</u> Exs. 302, 306, 307) for each of the quarters in dispute included the jeopardy assessments against Icon. Defendant does not contend

---

[5] Defendants assert Plaintiff cannot rely on the evidence it uses to support the reasonableness of the jeopardy assessment because Plaintiff did not include that evidence in its initial disclosure pursuant to Fed. R. Civ. P. 26(e); thus, Plaintiff cannot use that evidence on a motion or a trial. (Defs.' Br. 11.) However, without deciding on Plaintiff's conformance with Rule 26(e), Defendants' argument lacks merit as Plaintiff can still use that evidence in proving the reasonableness of the jeopardy assessment because the "IRS . . . need not restrict itself to normally admissible evidence." <u>Burd</u>, 774 F. Supp. at 906.

[6] Joseph's conveyance of his interest in the house to his wife will be discussed in Part I.D. of this opinion, <u>infra</u>.

Joseph did not receive the Certificates of Assessments and Payments.   Therefore, he received notice.

### C.   **Reduction of Assessments**

Defendants argue that Joseph's tax liability should be reduced by $8,512.91 because an IRS agent "promised" that Icon would be refunded this amount.  (Defs.' Opp. Br. 20; Defs.' Br. 13.)  However, Defendants do not provide any evidence relating to Joseph's communications with any IRS agent.  Additionally, Defendants maintain this refund is based on two allegedly "uncashed" checks: a $25,000 payroll check Icon had issued Joseph on December 27, 2001, and a $3,000 check paid to Joseph in June 13, 2003.  (Defs.' Br. 14; Ex. 504, J. Grello Dep., 34:15-35:2.)  Defendants have not proven that Joseph is entitled to this refund because they failed to provide the checks or show that they were not cashed.  Furthermore, these supposedly "uncashed" checks relate to Icon's tax liability for the December 2001 and June 2003 quarters.  Icon's tax liability for December 2001 is not at issue in this matter and Plaintiff is not seeking judgment for the June 2003 quarter.  Therefore, to the extent that Joseph is entitled to a refund based on those checks, they do not affect his liability for the periods in question.

Defendants argue that Plaintiff wrongfully assessed a penalty against Joseph for the June 30, 2003 quarter.  (Defs.' Opp. Br. 19; Defs.' Br. 12.)  Plaintiff concedes that it is not seeking judgment for that quarter.  Therefore, as started earlier, Joseph's liability should be reduced by $2,745.49.  (Pl.'s Opp. Br. 8-9.)

### D.  **Sale of Joseph's Interest in Defendants' Home**

### i.   **Fraudulent Conveyance**

N.J. Stat. Ann. § 25:2-27(a) (West 2010), provides:

> a. A transfer made . . . is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . .[7]

A claim of fraudulent conveyance "allow[s] the creditor to undo the wrongful transaction so as to bring the property within the ambit of collection," Gilchinsky v. Nat'l Westminster Bank N.J., 159 N.J. 463, 475 (1999); but, the burden of proof lies with the party "seeking to set aside the conveyance." Id. at 476.

Plaintiff argues that Joseph's conveyance of his interest in the house to his wife on April 6, 2005, for $1.00 (Ex. 226) is fraudulent and should be set aside.[8] (Compl. ¶ 29.) This Court agrees. Plaintiff's claim arose before the sale because "[u]nder § 6321 . . . unless another date is fixed by law, non-payment of taxes after demand creates a lien commencing at the assessment date." In re DeAngelis, 373 F.2d 755, 757 (3d Cir. 1967) (citing Glass City Bank v. United States, 326 U.S. 265 (1945)). Here, the first assessment against Icon was in October 4, 2004.

---

[7] N.J. Stat. Ann. § 25:2-26 (West 2010) provides additional factors, "badges of fraud," a court may consider in determining whether a conveyance is fraudulent. These factors are:

> a. The transfer or obligation was to an insider;
> b. The debtor retained possession or control of the property transferred after the transfer;
> c. The transfer or obligation was disclosed or concealed;
> d. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> e. The transfer was of substantially all the debtor's assets;
> f. The debtor absconded;
> g. The debtor removed or concealed assets;
> h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and
> k. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

[8] In light of this Court's conclusion that the transfer was fraudulent, it need not address whether Darlene holds the property as Joseph's nominee. (Pl.'s Br. 11.)

(Compl. ¶ 11.)  Therefore, the lien arose before the sale.  Also, Joseph cannot feign ignorance of Icon's unpaid taxes as Plaintiff notified Joseph on July 6, 2004, that Icon had not remitted the trust fund taxes.  (Ex. 240.)  Moreover, although the house was valued at $700,000, Joseph conveyed his interest in the house for $1.00.  Additionally, Joseph admitted that other than his interest in the house, he had no other property.  (Ex. 504, J. Grello Dep., 106:25-107:1.) Therefore, Joseph admitted that Icon's bankruptcy and the conveyance of his interest to his wife left him insolvent because he had no other assets to satisfy his tax liability.  See N.J. Stat. Ann. § 25:2-23(a) (West 2010) ("[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation."); Zucker v. Silverstein, 134 N.J. Super. 39, 53 (App. Div. 1975) (stating a person is insolvent "when he cannot pay his debts as they become due from the present fair saleable value of his assets").  Thus, the transfer was clearly fraudulent.[9]

Nonetheless, Defendants argue that Joseph transferred the property for estate planning purposes under the advice of counsel and the transfer was not intended to delay or hinder Plaintiff's ability to collect.  (Defs.' Br. 12.)  This Court finds this argument less than credible. Joseph and Darlene held the property as tenants by the entirety.  Therefore, Darlene owned an undivided one-half interest with a right of survivorship in the property.  N.J. Stat. Ann. § 46:3-17.5 (West 2010).  Joseph did not have to transfer his interest in the property to her because she would automatically inherit the whole if she predeceases him.  Id.; see also Newman v. Chase, 70 N.J. 254, 259 (1976).  Therefore, Defendants have failed to provide a valid legal reason for the transfer.

---

[9] However, because Defendants hold the property as tenants by the entirety, Plaintiff's lien only attaches to Joseph's present interest in the property, which includes the right of survivorship.  King v. Greene, 30 N.J. 395, 412 (1959); see also Sisco v. N.J. Bank, N.A., 158 N.J. Super. 111, 122 (App. Div. 1978) (stating "that in the case of a tenancy by the entirety, a levying judgment creditor of one of the spouses . . . acquires no greater rights in the property than those of the debtor spouse."); Cherry v. Cherry, 168 N.J. Super. 386, 390 (Law Div. 1979) ("a creditor levying upon the interest of one of the spouses obtains the full interest of that spouse, including the right of survivorship.").

In addition, Defendants maintain Joseph received sufficient consideration for the sale because Darlene assumed the mortgage on the house. (Defs.' Opp. Br. 12.) This Court is not persuaded by this argument. Although Joseph sold his interest in the house to his wife, both the note and the accompanying Rider identify both Darlene and Joseph as "borrowers." (Exs. 224, 225.) Furthermore, Joseph testified that Darlene had not been working at the time of the sale; thus, it is not surprising the mortgage company noted that Darlene's income was not used to secure the mortgage. (Ex. 503, D. Grello Dep., 15:1-9.) Moreover, Darlene testified that after the sale, Joseph's income paid the mortgage and that "he [Joseph] was still on the mortgage." (Id. at 13:16-20; 15:18-19; 21:13-19.) Joseph also admitted that even though he had transferred the house to his wife, he was still responsible for the current mortgage. (Ex. 504, J. Grello 96:6-9; 99:8-10.) Additionally, Joseph testified that other than the change in title, everything else was the same, and he continues to reside at the house. (Id. at 110:1-6.) These facts clearly show that the transfer was in title only and that Joseph is still responsible for the mortgage on the house. Hence, the consideration Joseph received was nominal.[10]

Defendants also assert the transfer did not render Joseph insolvent as he and Darlene held the property as tenants by the entirety and thus the property was not an asset. (Defs.' Opp. Br. 12.) This argument lacks merit. The Supreme Court has specifically concluded that "[t]he statutory language authorizing the tax lien [under § 6321] 'is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have.'" United States v. Craft, 535 U.S. 274, 283, 285 (2002) (quoting United States v. Nat'l Bank of Commerce, 472 U.S. 713, 719-20 (1985)). Consequently, an individual's "rights in the entireties property fall

---

[10] Since Darlene did not pay adequate consideration for Joseph's interest in the property, she is not a "purchaser" under 26 U.S.C. § 6323(a). A "purchaser" is "a person who, for adequate and full consideration in money or money's worth, acquires an interest . . . in property . . . ." 26 U.S.C. § 6323(h)(6). As a result, her interest in the property is not protected and the lien is valid against her.

within this broad statutory language" because that individual's inability "to unilaterally alienate the property does not preclude him[/her] from possessing 'property and rights to property' for purposes of § 6321." <u>Craft</u>, 535 U.S. at 283.   In addition, N.J. Stat. Ann. § 25:2-21 (West 2010) (emphasis added) explicitly states: "'Asset' means property of a debtor, but the term does not include: c. An interest in property held in tenancy by the entireties <u>to the extent it is not subject to process by a creditor holding a claim against only one tenant</u>."   Here, Joseph's interest is subject to process because Plaintiff has filed a lien against the house; hence, it is an asset and its subsequent transfer rendered Joseph insolvent.  As a result, the transfer was fraudulent.

<u>**CONCLUSION**</u>

For the reasons stated above, Plaintiff's Motion for Summary Judgment is GRANTED. Defendant's Motion for Summary Judgment is DENIED.  However, the lien against Defendants' property should be reduced by the assessments for the December 31, 2002, and June 30, 2003, quarters to reflect Plaintiff's concession that it is not seeking judgment on those quarters.

**SO ORDERED.**

s/ Susan D. Wigenton
**Susan D. Wigenton, U.S.D.J.**

cc:  Madeline Cox Arleo, U.S.M.J.